HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AURA ROSSI,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF LAKEWOOD, et al,<br><br>　　　　　　Defendants<br>──────────────────────<br>LAKEWOOD FIRE DEPARTMENT, et al,<br><br>　　　　　　Third-Party Plaintiffs,<br><br>　　v.<br><br>CITY OF LAKEWOOD,<br><br>　　　　　　Third-Party Defendant.. | Case No. C07-5411 RBL<br><br>ORDER |

THIS MATTER comes before the Court on Motions for Summary Judgment [Dkt. #13] and for Rule 11 Sanctions [Dkt. #25] brought by Defendant Lakewood Fire Department officials Karl Roth, Ted Thompson and Paul Webb; and Motion to Amend Complaint [Dkt. #24] brought by Plaintiff, Aura Rossi. The Court has reviewed the materials submitted in connection with each motion and has heard the argument of the parties and for the following reasons, the Motion for Summary Judgment is **DENIED**, the Motion for Sanctions is **DENIED** and the Motion to Amend Complaint is **GRANTED**.

## I.  FACTUAL BACKGROUND

Aura Rossi purchased a single family residence at 6 Creekwood Lane, Lakewood, Washington in March of 2005.  In May of 2005 she applied with the City of Lakewood for an Adult Family Home Pre-Inspection Permit.  Her plan was to change the use of the home to accept high functioning disabled residents on a 24-hour per day/seven days per week basis.  Neighborhood opposition to Rossi's plan was intense.

Regulations governing the conversion of single-family homes to adult family homes after July 1, 2001 require that the adult family home be served by fire apparatus access roads and water supplies meeting the requirements of the local jurisdiction for a single family residence.  WAC 51-51-0324.  The City of Lakewood, as the local jurisdiction, adopted the International Fire Code (IFC) as the governing fire safety regulations in the 1990s.  The relevant version of the IFC (2003) requires access roads to be 20 feet wide.  2003 IFC §503-2-1.

In late July 2005 IFC measured the width of Creekwood Lane and determined that in some places it was as narrow as 12 feet.  In a follow-up memo the inspector recommended three possible responses to the access road problem: (a) Rossi could widen Creekwood Lane to 20 feet, (b) Rossi could retrofit her home with sprinklers, or (c) Rossi's application could be denied.

On August 8, 2005, Lakewood issued the pre-inspection permit conditioned on Rossi interconnecting smoke detectors in the home, obtaining appropriate permits and solving the access road issue.  Rossi appealed, challenging the requirement that she widen the road or retrofit the home with sprinklers.

On November 28, 2005, a hearing examiner appointed by the City of Lakewood ruled in favor of Ms. Rossi.  The hearing officer observed that the event triggering the need to comply with the 2003 IFC was the change of use from single family residence to Adult Group Home pursuant to the Lakewood Municipal Code.  Both the Federal Housing Amendment Act (FHA) and the Washington Housing Policy Act (WHPA) prohibit discrimination in housing against persons with disabilities.  The hearing officer reasoned that a city can't treat a residential structure occupied by persons with disabilities differently than a residential structure occupied by non-handicapped persons.  In his view, therefore, Lakewood could not require a permit for an adult home housing the handicapped when it wouldn't require one if a new family

was moving into the home. Without the requirement of a permit, there was no authority for imposing the newer, wider width requirement or the alternative for sprinklers.

Neither side appealed the hearing examiner's decision.

Thereafter, on January 18, 2006, the LFD reinspected the Rossi house and reiterated their prior position that Creekwood Lane does not comply with the minimum road width of 20 feet. In March of 2006 the Lakewood City attorney acknowledged that the City could not impose the access road minimum width requirement but noted that the hearing examiner recognized that the Department of Social and Health Services (DSHS) has authority to regulate and license adult family homes and the DSHS might require compliance with the wider access road standard. However, DSHS did not intervene on the issue. DSHS determined that it would not, and could not, override any local building or fire codes.

In April of 2006, Ms. Rossi applied for an adult family home license but her application was ruled incomplete because she had not passed the local inspection requirements a/k/a road access requirements under the fire code. After that, the situation remained static, with the City claiming it would not grant the pre-inspection permit until the DSHS decided whether to require the 20 foot minimum for an access road to an adult family home and DSHS requiring the issue to be resolved at the local level before they would consider the license application complete and thus ripe for DSHS's review.

This stand-off persisted until Ms. Rossi was forced to declare bankruptcy and allow the home to be taken in foreclosure. She filed her original complaint in Pierce County Superior Court on July 23, 2007. Her original complaint alleges that the City of Lakewood and several city officials acted in concert to violate civil rights granted her by federal and state statutes. In her final cause of action (14th), she asserts that the city officials together with officials of the Lakewood Fire District acted in a continuing and coordinated pattern of extreme and outrageous behavior to intentionally inflict emotional distress on her. Because the action included claims under federal law, defendants removed it to this Court on August 8, 2007. In response to the motion by fire department officials to dismiss the outrage claim against them, the plaintiff seeks to amend her Complaint to link the fire department and fire officials to other claims contained in the original Complaint. The motions are treated separately below.

ORDER
Page - 3

## II. DISCUSSION

**A.     Summary Judgment Motion and Motion for Sanctions.**

    **1.     Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

    **2.     Outrage and Intentional Infliction of Emotional Distress.**

Under Washington law, the tort of outrage is the same as the tort of intentional infliction of emotional distress. *Snyder v. Med. Serv. Corp.*, 145 Wn.2d 233, 250, 35 P.3d 1158 (2001). The elements of the tort are: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). The moving defendants point out that the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kloepfl*, 149 Wn.2d at 196. They argue that no reasonable jury could find that the conduct of the fire department defendants meets the high burden of proof required to sustain this claim.

The moving defendants claim that they are contractually bound by an inter-local agreement to enforce the International Fire Code and state law. They argue that they were instructed by the Washington Association of Building officials and DSHS to certify access road compliance with the Fire Code when inspecting a residence which seeks to become an Adult Family Home. They assert that they did nothing

more than comply with their contractual obligations when recommending that the plaintiff either widen Creekwood Lane or retrofit her home with sprinklers.  According to moving defendants, under no set of circumstances alleged by Ms. Rossi could the actions of the fire department defendants be characterized as extreme or outrageous.

The world appears much different to Aura Rossi.  She contends that the fire department defendants, acting in concert with city officials, purposely chose to disregard the decision of the hearing examiner prohibiting the City and its fire department from imposing a 20-foot minimum width requirement upon Creekwood Lane and instead engaged in a bureaucratic version of "blind man's bluff" in order to not only deny her civil rights but to bring her to financial ruin in the process.  From her perspective, the fire department defendants were fully and continuously engaged in the effort to destroy her financially.

The current state of the record does not allow the Court to determine without qualification whether the fire department was engaged in little more than a ministerial action as they seem to allege, or a "no holds barred" effort to keep Ms. Rossi from opening a group home in an up-scale neighborhood.  The issues raised in the third party complaint filed by the fire department defendants against the city defendants will eventually result in a jury determination of this important question.  For now, the Court is not at all confident that a reasonable jury could only reach the conclusion now advocated by the moving defendants. The hearings examiner found in favor of Ms. Rossi in November of 2005.  Neither side appealed.  The fire department reinspected in January of 2006 and held fast to their position that the City Code required a 20-foot minimum width for the access road or, as an accommodation, the residence had to be sprinklered.  Then, for more than a year and a half the City appears to have flaunted the legal decision of the hearings examiner and caused predictable and significant harm to plaintiff.  If believed, plaintiff's version of the facts could easily result in a jury verdict in favor of plaintiff against fire department defendants on the tort of outrage. The Motion for Summary Judgment [Dkt. #13] is **DENIED WITHOUT PREJUDICE** to renew at a later date.  The Motion for Rule 11 Sanctions [Dkt. #25] is **DENIED**.

**3.     Motion to Amend Complaint.**

Consistent with plaintiff's view of the evidence, she seeks to amend her complaint to accuse the fire department defendants of violating her civil rights in the same manner as the City defendants with whom they allegedly conspired. The motion to amend was filed before the cut-off for adding new parties.

Federal Rule of Civil Procedure 15(a) contemplates that a court will freely grant leave to file an amended complaint when the interests of justice so require. Absent some compelling reason to the contrary, the Court should generally grant such motions.

The fire department defendants ask the Court to deny the motion to amend for one or more of the following factors: (1) the motion is brought in bad faith, (2) it is presented only after undue delay, (3) it would cause undue prejudice to these defendants and/or (4) the amended complaint would be futile. *See Lockheed Martin Corp. v. Network Solutions Inc.,* 194 F.3d 980, 986 (9th Cir. 1999).

Based upon their view of the facts, fire department defendants urge the motion be denied, arguing that plaintiff is guilty of bad faith by cynically proposing amendment as a means of avoiding dismissal of the complaint against these defendants. Given the Court's denial of the summary judgment, this argument is no longer viable. The motion to amend cannot be categorized as a life line for a dying lawsuit.

Defendants also claim that plaintiff unnecessarily delayed amending her complaint and the motion should be denied for that reason. The Court disagrees. The motion is timely and the delay is understandable given plaintiff's lack of familiarity with the behind-the-scenes conduct of the fire department defendants and that of their City of Lakewood colleagues.

Defendants claim of prejudice also fails. With the denial of their motion for summary judgment, the fire department defendants are in this case for the long haul. The amended complaint does not "resurrect" an otherwise dead case as they had feared. The discovery in this case will focus on a discrete series of transactions and events that will, for the most part, be relevant to the City defendants and the fire department defendants alike. The universe of relevant evidence in this case does not appear to be affected by the amended complaint.

Finally the Court is not at all prepared to say that plaintiff's effort to link the fire department defendants to the violation of substantive civil rights is futile. For the reasons cited in connection with the summary judgment motion, this Court can easily foresee the development of evidence demonstrating a

cooperative and equal relationship between the various defendants as they responded to plaintiff's application. The evidence will ultimately decide the issue but plaintiff should be given the opportunity to pursue her claims and develop the evidence she believes supports those claims. The Motion to Amend Complaint [Dkt. #24] is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 15th day of January, 2008.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE